⑥

**FILED**

APR 2[illegible] 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
NORTHERN DISTRICT OF CALIFORNIA

**COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

Name Scherffius          Michael          E.
    (Last)                    (First)                    (Initial)

Prisoner Number    V-96171

Institutional Address    P.O. Box 409050 Ione, CA 95640

===================================================================

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

MICHAEL SCHERFFIUS
_____
(Enter the full name of plaintiff in this action.)

           vs.

CHRISTOPHER SMITH, STEPHEN SENG,

KAREN TODD, LAWRENCE C. FONG,

B. BARNETTE, R. PARNELL GALLOWAY,

L. HEFFNER, SCOTT HEATLEY,
_____
(Enter the full name of the defendant(s) in this action)
**SEE ATTACHED SHEET**

(PR)

**CV 13 1850**

Case No. _____
(To be provided by the Clerk of Court)

**COMPLAINT UNDER THE CIVIL RIGHTS ACT,**
Title 42 U.S.C § 1983

**EJD**

*[All questions on this complaint form must be answered in order for your action to proceed..]*

I.    Exhaustion of Administrative Remedies.

    [**Note:** You must exhaust your administrative remedies before your claim can go

    forward.  The court will dismiss any unexhausted claims.]

    A.    Place of present confinement    Mule Creek State Prison

    B.    Is there a grievance procedure in this institution?

            YES (X)    NO ( )

    C.    Did you present the facts in your complaint for review through the grievance

        procedure?

            YES (X)    NO ( )

    D.    If your answer is YES, list the appeal number and the date and result of the

        appeal at each level of review.  If you did not pursue a certain level of appeal,

        explain why.    See Exhibits A, B, C and D.

COMPLAINT              - 1 -

1.  Informal appeal __Waived_____

_____

_____

2.  First formal level___MCSP 16-11-10583 (4-22-11)_____

MCSP-16-10-13163 (3-9-11) MCSP 16-10-11837 (9-20-10)

MCSP 16-10-11357 (6-22-10)

3.  Second formal level_____

MCSP 16-10583 (6-6-11) MCSP 16-10-13163 (5-10-11)

MCSP 16-10-11837 (11-8-10) MCSP16-10-11837 (6-20-10)

4.  Third formal level_____

MCSP 16-10583 (11-30-11) MCSP 16-10-13163 (10-24-11)

MCSP 16-10-11837 (3-3-11) MCSP 16-10-11837 (3-15-11)

E.   Is the last level to which you appealed the highest level of appeal available to you?

     YES (x )      NO ( )

F.   If you did not present your claim for review through the grievance procedure, explain why._____

_____

_____

II.   Parties.

A.   Write your name and your present address. Do the same for additional plaintiffs, if any.

Michael E. Scherffius, P.O. Box 409060 Ione, CA

_____

_____

B.   Write the full name of each defendant, his or her official position, and his or her place of employment.

See attached compliant._____

COMPLAINT                    - 2 -

III.   Statement of Claim.

State here as briefly as possible the facts of your case.  Be sure to describe how each defendant is involved and to include dates, when possible.  Do not give any legal arguments or cite any cases or statutes.  If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

See attached complaint.

IV.   Relief.

Your complaint cannot go forward unless you request specific relief.  State briefly exactly what you want the court to do for you.  Make no legal arguments; cite no cases or statutes.

See attached complaint.

COMPLAINT                                   - 3 -

1

2

3

4

5    I declare under penalty of perjury that the foregoing is true and correct.

6

7    Signed this _13th_ day of _December_ , 20_12_

8

9                    _Michael E. Schaffin_

10                   (Plaintiff's signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                          - 4 -

1
2  Michael E. Scherffius
   V-96171/14-109
3  P.O. Box 409060
   Ione, CA
4  95640

5  IN PRO PER

6

7

8

9                    UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11  MICHAEL SCHERFFIUS,
                               Case No.
12             Plaintiff,
                               COMPLAINT
13        vs.

14  CHRISTOPHER SMITH,
    STEPHEN TSENG,
15  KAREN TODD,
    LAWRENCE C. FONG,
16  B. BARNETT,
    R. PARNELL GALLOWAY,
17  L.  HEFFNER,
    SCOTT HEATLEY,
18  JALAL SOLTANIAN-ZADEH,
    K. MC LEAN,
19  CHERYL SCHUTT,
    A. SIMMONS,
20  L. BLANEY, and
    G. WILLIAMS,
21
               Defendants.
22  _____/

23                    INTRODUCTION

24        This is a civil rights action filed by Michael E.

25  Scherffius, a state prisoner, for damages, declaratory and

26  injunctive relief under 42 U.S.C. §1983, alleging denial of

27  medical care in violation of the Eighth Amendment to the United

States Constitution, gross negligence and medical malpractice.

1.

## JURISDICTION

1.    The Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. §§1331(1) an 1343.0

2.    The Court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. §1367.

## PARTIES

3.    The plaintiff, Michael E. Scherffius, is and was at all relevant times mentioned herein an inmate in the custody, control and care of the California Department of Corrections and Rehabilitation (CDCR) employees at Mule Creek State Prison (MCSP).  At all times during his incarceration plaintiff has relied on the medical care providers of CDCR and MCSP to provide him with the necessary medical care.

4.    Defendant Christopher Smith, MD, was during part of the time relevant herein, employed by CDCR as the Chief Physician and Surgeon (CP&S) at MCSP.  Plaintiff is informed and belies, and thereon alleges, that defendant Smith is a properly trained and licensed medical doctor who was responsible for the medical care of all inmates at MCSP. This includes, but is not limited to, the supervision, direction, and/or proper training of the medical staff at MCSP in the delivery of health care services and the management of health care programs; involvement in the determination of proper medical care for inmates, including, but not limited to, having authority to order and approve medical tests and treatments to be done; communication of medical needs to the correctional custody staff and relative inmate job supervisory

1   staff; and, generally, making sure that proper medical

2   treatment is provided to all inmates. Plaintiff is further

3   informed and believes, and thereon alleges, that defendant

4   Smith is responsible for assuring that MCSP medical staff,

5   and all other medical providers with whom MCSP contracts in

6   providing medical care to inmates at MCSP, provide proper

7   medical care to the inmates, and that all such individuals

8   know and understand and act pursuant to CDCR policy. At all

9   times mentioned herein defendant Smith was acting under color

10  of state law, in the course and scope of his employment, and

11  is sued herein in his official and individual capacities.

12          5.   Defendant Stephen Tseng, MD, is and at times

13  mentioned herein was, employed by the CDCR as a Physician

14  and Surgeon at MCSP. Plaintiff is informed and believes,

15  and thereon alleges, that defendant Tseng is a properly trained

16  and licensed medical doctor who is and has been responsible

17  for the medical care of all inmates at MCSP Facility C. At

18  all times mentioned defendant Tseng was acting under color

19  of state law, in the course and scope of his employment, and

20  is sued in his official and individual capacities.

21          6.   Defendant Karen Todd is, and at all times

22  mentioned herein was, employed by CDCR as a Physician's

23  Assistant at MCSP. Plaintiff is informed and believes, and

24  thereon alleges, that defendant Todd is a properly trained

25  and licensed Physician's Assistant who is and has been

26  responsible for the medical care, under the supervision of

27  licensed medical doctors, of all inmates at MCSP. At all

    times mentioned herein defendant Todd was acting under color

of state law, in the course and scope of her employment, and is sued in her official and individual capacities.

7.   Defendant Lawrence C. Fong, M.P.H., is, and at all times relevant herein was, employed by the CDCR as the Chief Executive Officer (CEO) Health Care Services (HCS), at MCSP.   Plaintiff is informed and believes, and thereon alleges, that defendant Fong is responsible for the supervision, direction, and/or training of all medical personnel at MCSP in the delivery of HCS and the management of health care programs.   At all times mentioned defendant Fong was acting under color of state law, in the course and scope of his employment, and is sued in his official and individual capacities.

8.   Defendant B. Barnett, MD, is and at times mentioned herein was, employed by the CDCR as a Physician and Surgeon at MCSP.   Plaintiff is informed and believes, and thereon alleges, that defendant Barnett is a properly trained and licensed medical doctor who is and has been responsible for the medical care of all inmates at MCSP Facility C.   At all times mentioned defendant Barnett was acting under color of state law, in the course and scope of his employment, and is sued in his official and individual capacities.

9.   Defendant R. Parnell Galloway, MD, is and at times mentioned herein was, employed by the CDCR as a Physician and Surgeon at MCSP.   Plaintiff is informed and believes, and thereon alleges, that defendant Galloway is a properly trained and licensed medical doctor who is and has been

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)
OSP 98 10924

responsible for the medical care of all inmates at MCSP Facility C. At all times mentioned defendant Galloway was acting under color of state law, in the course and scope of his employment, and is sued in his official and individual capacities.

10. Defendant L. Heffner, MD, is, and at all times relevant herein was, employed by the CDCR as the Chief Executive Officer (CEO) Health Care Services (HCS), at MCSP. Plaintiff is informed and believes, and thereon alleges, that defendant Heffner is responsible for the supervision, direction, and/or training of all medical personnel at MCSP in the delivery of HCS and the management of health care programs. At all times mentioned defendant Heffner was acting under color of state law, in the course and scope of his employment, and is sued in his official and individual capacities.

11. Defendant Scott Heatley, MD, is, and at all times relevant herein was, employed by CDCR as the Chief Medical Officer (CMO) at MCSP. Plaintiff is informed and belies, and thereon alleges, that defendant Heatley is a properly trained and licensed medical doctor who was responsible for the medical care of all inmates at MCSP. This includes, but is not limited to, the supervision, direction, and/or proper training of the medical staff at MCSP in the delivery of health care services and the management of health care programs; involvement in the determination of proper medical care for inmates, including, but not limited to, having authority to order and approve medical tests and treatments to be done;

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)
OSP 98 10924

communication of medical needs to the correctional custody staff and relative inmate job supervisory staff; and, generally, making sure that proper medical treatment is provided to all inmates. Plaintiff is further informed and believes, and thereon alleges, that defendant Heatley is responsible for assuring that MCSP medical staff, and all other medical providers with whom MCSP contracts in providing medical care to inmates at MCSP, provide proper medical care to the inmates, and that all such individuals know and understand and act pursuant to CDCR policy. At all times mentioned herein defendant Heatley was acting under color of state law, in the course and scope of his employment, and is sued herein in his official and individual capacities.

12. Defendant Jalal Soltanian-Zadeh, MD, is and at times mentioned herein was, employed by the CDCR as a Physician and Surgeon at MCSP. Plaintiff is informed and believes, and thereon alleges, that defendant Tseng is a properly trained and licensed medical doctor who is and has been responsible for the medical care of all inmates at MCSP Facility C. At all times mentioned defendant Tseng was acting under color of state law, in the course and scope of his employment, and is sued in his official and individual capacities.

13. Defendant K. McLean is, and at all times relevant herein was, employed by the CDCR as a Health Care Appeals Coordinator at MCSP. Plaintiff is informed and believes, and thereon alleges, that defendant McLean is responsible for the prompt and accurate administration of all medical health care appeals filed by inmates at MCSP. At all times

6.

1    mentioned defendant McLean was acting under color of state

2    law, in the course and scope of her employment, and is sued

3    in her official and individual capacities.

4         14.  Defendant Cheryl Schutt, RN, BSN, was, at all

5    times mentioned herein, employed by the CDCR as a Registered

6    Nurse at MCSP serving in the capacity of the most Senior RN

7    and, at the point in time specified herein, as Acting Chief

8    Executive Officer at MCSP.  Plaintiff is informed and believes,

9    and thereon alleges, that defendant Schutt is responsible

10   for the supervision, direction, and/or training of all medical

11   personnel at MCSP in the delivery of HCS and the management

12   of health care programs.  At all times mentioned defendant

13   Schutt was acting under color of state law, in the course

14   and scope of her employment, and is sued in her official and

15   individual capacities.

16        15.  Defendant A. Simmons, RN, is, and at all times

17   relevant herein was, employed by the CDCR as a registered

18   nurse at MCSP.  Plaintiff is informed and believes, and thereon

19   alleges, that defendant Simmons is a properly trained and

20   licensed Registered Nurse who is and has been responsible

21   for the medical care of all inmates at MCSP.  At all times

22   mentioned defendant Simmons was acting under color of state

23   law, in the course and scope of his employment, and is sued

24   in his official and individual capacities.

25        16.  Defendant L. Blaney, RN, is, and at all times

26   relevant herein was, employed by the CDCR as a registered

27   nurse at MCSP.  Plaintiff is informed and believes, and thereon

     alleges, that defendant Blaney is a properly trained and

7.

1   licensed Registered Nurse who is and has been responsible
2   for the medical care of all inmates at MCSP.  At all times
3   mentioned defendant Blaney was acting under color of state
4   law, in the course and scope of his employment, and is sued
5   in his official and individual capacities.

6       17.  Defendant G. Williams, MD and Physical Medicine
7   and Rehabilitation Therapy (PM&R), is and at times mentioned
8   herein was, employed by the CDCR as a Physician and Surgeon
9   at MCSP.  Plaintiff is informed and believes, and thereon
10  alleges, that defendant Williams is a properly trained and
11  licensed medical doctor who is and has been responsible for
12  the medical care of all inmates at MCSP Facility C.  At all
13  times mentioned defendant Williams was acting under color
14  of state law, in the course and scope of his employment, and
15  is sued in his official and individual capacities.

### FACTS

17      18.  Since approximately 2007, Plaintiff has been
18  diagnosed with wide spread severe cervical stenosis complicated
19  by acute lumbar radiculopathy, fibermyalgia, and multi-level
20  facet joint arthropathy.  These conditions have progressed
21  over the years as a result of inattention and failure to treat
22  the growing diseases.  Plaintiff is informed and believes,
23  and thereon alleges, that defendants have known of these
24  medical conditions since plaintiff's transfer to MCSP on
25  October 31, 2005.  Plaintiff requires a pain management program
26  consistent with that provided through community pain clinics
27  and surgery to prevent a potentially life threatening
    condition.  Plaintiff is informed and believes, and thereon

8.

alleges, that from September 2007 defendants have been aware of these medical needs.

19. Plaintiff has suffered continues to suffer from sever pain, as a result of his severe cervical spinal stenosis with incovertebral joint disease, neural foraminal narrowing, lumbar disc disease and herniation, which would be treated through a community pain clinic with daily pain medication. Plaintiff is informed and believes, and thereon alleges, that defendants have, from September 2007, have been aware of Plaintiff's need for treatment of pain due to his severe cervical spinal stenosis with incovertebral joint disease, neural foraminal narrowing, lumbar disc disease and herniation.

20. From September 2007 to the present defendants have repeatedly delayed performing recommended medical tests and repeatedly delayed or refused to provide medical treatment for Plaintiff's severe cervical spinal stenosis. Said medical tests include, but are not limited to, Magnetic Resonance Imaging (MRI), Electromyograph (EMG), and X-Rays with neck flexion. Potential medical treatment includes, but is not limited to, surgical repair of spine.

21. From September 2007 to the present defendants have failed and refused to provide Plaintiff with necessary pain medications or appropriate dosages thereof.

22. From September 2007 to the present defendants have subjected Plaintiff to hostility and abuse by apparent retaliation for Plaintiff's efforts to secure medication, diagnosis, and/or treatment. Said conduct of defendants has included, but is not limited to, adding false, and misleading

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

OSP 98 10924

1   documentation to his medical records and stopping proscribed
2   medication.

3       23. Plaintiff has filed numerous inmate appeals
4   through the prison grievance system relative to defendant's
5   conduct described herein. Those appeals are attached hereto
6   as Exhibits A through D.

7       24. On April 3, 1997 Dr. Cornell Shelton conducted
8   a physical examination of the Plaintiff and reached the opinion
9   that he was suffering from a bilateral radicular process
10  secondary to his history of multiple trauma.

11      25. On September 7, 2007 Dr. Michael Jerome Henry
12  conducted a physical examination of the Plaintiff and reached
13  the opinion that he was suffering from cervical spine pathology
14  and lumbar disc disease. Dr. Henry's care and treatment
15  objectives were to first resolve pain control of the cervical
16  and upper trunk myofascial (fibromyalgia) symptomology. Care
17  would then be given to the lumbar sacral and thoracie spines.

18      26. On October 19, 2007 a MRI of the Plaintiff's
19  cervical spine revealed sever multilevel degenerative disc
20  disease from C3-C4 through C6-C7 with mild to moderate levels
21  of central canal narrowing. Stenosis was present due to
22  moderate degree of uncontrevertebral joint disease. Bilateral
23  neural foraminal narrowing with no evidence of herinated disc.

24      27. On May 28, 2008 Dr. Feng Bai conducted a physical
25  examination of the Plaintiff and reached the opinion that
26  he was suffering from multilevel disc disease with spinal
27  canal stenosis of C4-C5 and C6-C7; at cervical spine C7 a
radiculopathy was noted with prominent nerve conduction

10.

1  deficit; probable lumbar disc disease with chronic radicular
2  pain in both legs; and fibromyalgia as evident by specific
3  pain trigger points distribution. Dr. Bai recommended a trial
4  treatment of the cervical spine using epidural steroid
5  injections; continue current pain medications consisting of
6  Tramadol 50 mg twice daily, Methocarbamol 750 mg three times
7  daily, Cymbata 30 mg at night, Lyrica 75 mg three capsules,
8  and Doxepin 50 ml; continue self-exercise; return to clinic
9  in six weeks after cervical epidural steroid injections.

10      28. On December 31, 2008 the Plaintiff was examined
11  by Dr. Feng Bai as a follow-up to his May 28, 2008 appointment.
12  Dr. Bai noted a worsening of C6-C7 foraminal stenosis
13  especially left (C7) arm digital radiculopathy. Dr. Bai
14  recommended a second set of epidural steroid injections under
15  flouroscopic guidance for neck pain control; continue current
16  medications; encourage self-exercise; consider surgical
17  consultations for cervical stenosis release; and, return in
18  four to six weeks after cervical epidural steroid injections.

19      29. On April 3, 2009 Plaintiff was seen by defendant
20  Dr. Stephen Tseng. Plaintiff informed defendant Tseng that
21  his pain intensity and pattern had not improved as a result
22  of the cervical steroid injections and current medications.
23  Defendant Tseng made no changes to Plaintiff's medications
24  and did not refer Plaintiff to Dr. Bai for a follow-up
25  appointment.

26      30. On June 1, 2009 Plaintiff was seen by defendant
27  Tseng who conducted a pain management assessment and
recommended a new set of MRI's. Defendant Tseng made no

11.

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)
OSP 98 10924

1 changes to Plaintiff's medications despite identifying area

2 where they were not being effective.

3     31. On August 31, 2009 Plaintiff was interviewed

4 by defendant Tseng regarding an inmate medical appeal made

5 necessary by the defendants delay in renewing Plaintiff's

6 medications causing unnecessary pain and suffering.

7     32. On November 10, 2009 Dr. F. Karl Gregorius

8 examined the Plaintiff and reached the opinion that he is

9 suffering from multilevel cervical spondylotic disease at

10 C3-4, C4-5, C5-6, and C6-7; marked spinal canal narrowing

11 at C4-5, C5-6, and C6-7; foraminal narrowing at all 4 segments,

12 C3 through C7; multilevel degenerative disc disease; and

13 fibromyalgia. He found the Plaintiff would need a 3 to 4

14 level corpectomy to decompress his cord in the existing nerve

15 roots at every segment. However, he was not then recommending

16 this surgery, but would prefer to wait and see if the symptoms

17 progress and develop into myelopathic symptoms. If they do

18 progress, Dr. Gregorius advised that the Plaintiff would need

19 anew MRI and referral back to him for consideration of an

20 extensive decompressive operation.

21     33. On February 19, 2010 defendant Tseng stopped

22 Plaintiff's prescription for Tramadol without explanation or

23 sound medical reasoning.          sound medical reasoning.

24     34. On March 25, 2010 defendant Tseng conducted a

25 chronic pain follow-up with the Plaintiff wherein he noted

26 Plaintiff's condition to include cervical radiculopathy, right

27 lumbar radiculopathy, and fibromyalgia.

12.

35. On May 17, 2010 Plaintiff was seen by defendant Dr. Jalal Soltanian-Zadeh for a cholesterol level follow-up and possible edema. Defendant Soltanian-Zadeh, despite being repeatedly informed by the Plaintiff of the need to consider his pain management needs with any decision made, determined Plaintiff's edema was caused by the prescribed Lyrica and immediately ordered it discontinued.

36. On June 1, 2010 Plaintiff was seen by defendant Tseng whom Plaintiff emphatically urged to re-address the prescription for Lyrica as his fibromyalgia had become far worse following its cancellation by defendant Soltanian-Zadeh on May 17, 2010. Defendant Tseng, being more fully informed of Plaintiff's medical factors, quickly determined that the edema could be traced to the start time of the morphine and immediately stopped it and restarted the Lyrica.

37. On June 22, 2010 Defendant Dr. Christopher Smith abruptly disapproved Plaintiff's prescription for Lyrica simply because this is a non-formulary drug. (Exhibit D.)

38. On July 15, 2010 Dr. Donald Van Fosan examined the Plaintiff and opinioned that, in comparison to the June 26, 2009 MRI, there are degenerative disc changes at C3-4, C4-5, C5-6, and C6-7; disc protrusions impinging into the central canal; at C6-7 there is a disc protrusion to the left displacing the cord posteriorly and may potentially affect the existing C7 nerve root; at C5-6 there is a bilateral neuroforaminal stenosis with some central canal stenosis and flattening of the cord; at C3-4 and C4-5 disc protrusion results in bilateral

13.

1  neuroforaminal stenosis as well as some central canal stenosis;

2  there is an L5-S1 disc protrusion; and, an EMG of the lower

3  extremities demonstrates degenerative changes in the paraspinal

4  muscles, vastus medialis, anterior tibrialis, biceps femoris,

5  and medial gastrocnemius muscles, all of the right side.  Dr.

6  Van Fosan's conservative management was not explained, but

7  preferred.  If this should prove "intolerable" the next step

8  would be an EMG of the upper extremities and possibly repeating

9  the MRI of the C-spine with referral back to Dr. Gregorius.

10      39.  On August 2, 2010 Defendant Karen Todd examined the

11  Plaintiff for a pain management follow-up recording Plaintiff's

12  pain level to be an average of 9 out of 10.  Defendant Todd

13  clearly noted Plaintiff's sharp electrical type shocks when

14  flexing his neck, she failed or refused to address this

15  potentially fatal atlantoaxial occipital sublaxation (base of

16  skull slides forward on flexion of neck to squeeze spinal cord)

17  which is easily detected through an inexpensive x-ray of the

18  neck.

19      40.  On September 15, 2010 Defendant Dr. R. Parnell Galloway

20  recorded a "disposition" on appeal (Exhibit C) in Plaintiff's

21  medical records wherein he gives his personal opinion,

22  unsupported by any medical data, that the Plaintiff "is driven

23  more by rage and perturbed by process than motivated by pain,

24  at least as we define it in medicine, as the product of some

25  physical pathology." (Ibid.)  Nonetheless, defendant Galloway

26  approved Plaintiff's Gabapentin as a substitute for Lyrica.

27      41.  On October 20, 2010 defendant Tseng examined the

14.

Plaintiff for a pain management follow-up registering an average of 7-8 out of 10 on pain scale. Defendant Tseng discontinued Plaintiff's Trazadone and his physical therapy. His recorded impression what that the Plaintiff continued to suffer from chronic pain secondary to Myofascial Disease; with the Fibromyalgia diagnosis questionable. His plan was to discontinued the Gabapentin and trial restart the Lyrica. He clearly recognizes the Plaintiff suffers from cervical disc disease with multiple level signs of spinal stenosis with radiculopathy.

42. On December 7, 2010 the Plaintiff was seen by Defendant Tseng for a pain management evaluation where he was given a multifactional questionnaire to determine if he was a good candidate for long term opiate use.

43. On January 24, 2011 Plaintiff was seen by defendant Tseng based on his complaint that rotating his neck to the right or flexing or extending his neck causes sharp pain and numbness down cervical spine into right should, down his arm and into his fourth and fifth fingers. Defendant Tseng's assessment was to continue the present pain management program, but that he was not a surgical candidate at this time.

44. On February 28, 2011 Plaintiff was seen by defendant Tseng for treatment of his hypertension and hyperlipidemia. Defendant Tseng noted that the Plaintiff was gaining weight, therefore not compliant with diet and exercise even though the Plaintiff clearly told defendant Tseng that he was in too much pain to exercise, registering an 8-9 on a scale of 1-10 in pain

15.

when walking. At this time defendant Tseng notified the Plaintiff that the Pain Management Committee, on February 24, 2011, had deemed him to not be a medically appropriate candidate for long term opiate therapy. Defendant Tseng ordered Plaintiff's morphine to be tapered off over the next three weeks.

45. On March 2, 2011 Plaintiff was seen by defendant Tseng for a pain management follow-up where he clearly informed defendant Tseng that he was not doing well, experiencing a pain level of 9-10 on a scale of 1-10 with electrical shocks going into both arms and trunk when flexing neck. Defendant Tseng did agree to request the Pain Management Committee to consider outside Pain Management assistance.

46. On April 8, 2011 Plaintiff was seen by defendant Dr. Barnette based on chief complaint of severe pain and muscle spasms with radiculopathy over the entire upper trunk and lower Lumbar Sine. Defendant Barnette made not changes to Plaintiff's pain management, merely stated that he would consult with the Pain Management Committee and recommending a Physiatry evaluation.

47. On April 29, 2011 Plaintiff was again seen by defendant Barnette with a chief complaint of day time pain registering 8-10 on a scale of 1-10 and night time pain registering 10 out of 10 on the same scale. Defendant Barnette made no changes to Plaintiff's pain management, stating simply that he was waiting for the Physiatry evaluation and would consult the Pain Management Committee.

48. On May 9, 2011 Plaintiff was seen by defendant Tseng

16.

with chief complaints of stenotic spinal disease, chronic cervical spine pain, Lipids, liquids elevated, lower urinary tract symptoms and a claim of adult obesity due to deconditioning. Defendant Tseng made no changes to Plaintiff's pain management despite clear evidence of increased pain levels.

49. On May 18, 2011 Plaintiff was seen by Defendant Dr. Williams, a Physical Medicine and Rehabilitation expert, via telemedicine consultation. Plaintiff's chief compliant was recorded as neck and whole body pain over the past 15 years with the neck getting progressively worse over the last couple of years. Defendant Williams claimed there was a disparity between what the Plaintiff stated as his ability to function and what the medical staff reported to have observed. However, this observation was never clarified. Despite being informed that attempts to stretch his neck cause severe pain, defendant Williams nonetheless recommended physical therapy to assist in neck exercises, stretching, and posture training. He deferred medication management to CDCR rather than follow his own pattern of pain management.

50. On May 31, 2011 Plaintiff was seen by defendant Todd, in stead of defendant Barnette as scheduled, as a follow-up to his appointment with defendant Williams. Defendant Todd did refer Plaintiff to physical therapy, but failed to act on recommendation of pain management.

51. On June 3, 2011 Plaintiff was seen by defendant Barnette who approved the recommendations of defendant Williams but failed to address Plaintiff's continued pain.

17.

52. On February 7, 2012 Plaintiff was seen by Doctor Gregorius who did not recommend surgery at that time, but clearly instructed medical staff that if the Plaintiff develops evidence of myelopathy he should be considered for surgery.

53. On September 5, 2012 Plaintiff developed symptoms which made both arms feel like they filled up with lead with the same sensation across his shoulders and chest. This occurred three times that day when even the slightest of weight or force was attached to his arms. ?This caused severe excruciating pain in his entire cervical spine form the bottom of the shoulder blades. This same sensation recurred on September 11 and 12.

54. On September 6, 2012 Plaintiff was seen by defendant Smith regarding a recommendation by the neurosurgeon for Norco. Defendant Smith began this appointment by announcing that Norco would not be approved and he would receive Cymbalta. No attempt to explain that Cymbalta did not work was successful. Defendant Smith was not concerned with Plaintiff's explanations, that the neurosurgeon had reported no myelopathy and therefore his recommendation was not valid. The Plaintiff explained the symptoms described in paragraph 54 above, but defendant Smith failed to apply his medical knowledge to this potential life threatening condition.

55. On September 14, 2012 Plaintiff was seen by defendant Tseng who told him these symptoms were not medically associated. Plaintiff's request for pain medication ('Norco) was denied because, as defendant Tseng put it, opiates do not work for the Plaintiff.

18.

56. Defendants, each and every one of them, have continued and do continue to ignore Plaintiff's serious medical condition, severe pain and life threatening episodes. They refuse to issue a medical hold until such time as it can be determined whether a long bus ride is safe and refuse to consider any options other than a denial of medical treatment.

## CLAIMS FOR RELIEF

## EIGHTH AMENDMENT VIOLATION:

## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

57. Plaintiff refers to and incorporates by reference herein the allegations of paragraphs 1 through 56, inclusive.

58. Plaintiff's medical condition, as described herein, constitutes a serious medical need in that failure to treat the condition has resulted in further significant injury, and the ongoing failure to treat it is likely to cause more serious injury. Said injury has included, but not necessarily been limited to, extreme pain and potential death if continually left untreated. Plaintiff's medical condition also significantly affects his activities in prison each and every day.

59. Plaintiff is informed and believes, and thereon alleges, that defendants have acted intentionally in the manner described above and with knowledge of plaintiff's suffering and the risk of further serious harm and potential death that could result from their actions or refusal to act.

60. Defendant's conduct violates 42 U.S.C. §1983, because that conduct constitutes deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment right

19.

1    to be free from cruel and unusual punishment.

2       61.   As a proximate result of the defendant's conduct,

3    plaintiff has suffered and continues to suffer general damages

4    in the form of severe pain and suffering and emotional distress.

5    Plaintiff is informed and believes, and thereon alleges, that

6    he will continue to suffer such damages in the future.

7       62.   As a further proximate result of defendant'

8    s conduct, plaintiff is informed and believes, and thereon

9    alleges, that he will suffer special damages in the future in

10   the form of medical expenses for treatment of his condition,

11   and loss of income.

### RELIEF REQUESTED

13   WHEREFORE, plaintiff requests that the court grant the

14   following relief:

15      A.   Issue an injunction ordering defendants Smith, Tseng,

16   Todd, Fong, Barnette, Galloway, Heffner, Heatley, Soltanian-

17   Zadeh or their agents to:

18      1.   Immediately place a medical hold preventing plaintiff

19   from being transferred from Mule Creek State Prison;

20      2.   Carry out without delay the medical treatment

21   recommended by the specialists consulted by the defendants.

22      B.   Award compensatory damages jointly and severally

23   against:

24      1.   Defendants Smith, Tseng, Todd, Fong, Barnette,

25   Galloway, Heffner, Heatley, Soltanian-Zadeh, McLean, Schutt,

1   Simmons and Blaney for the physical and emotional injury

2   resulting from their failure to provide adequate medical care

3   for the plaintiff.

4   Date: *December 13, 2013*

5                               Respectfully submitted,

6

7                               MICHAEL E. SCHERFFIUS
                                PLAINTIFF IN PRO PER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                21.

**Name to seek:** michael scherffius

Get Info    Menu

| Case | Judge | Title | First | Middle | Last | Filed | NOS |
|------|-------|-------|-------|--------|------|-------|-----|
| 5:11-cv-02099-EJD | EJD | Scherffius v. Mule Creek State Prison Health Care | Michael | E. | Scherffius | 4/28/2011 | 555 |

4/23/2013 9:34 AM